**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| EMG TECHNOLOGY, LLC, <br><br>            Plaintiff, <br><br>v. <br><br>AMICA MUTUAL INSURANCE COMPANY, <br><br>            Defendant. | Case No. 6:14-CV-94-MHS <br><br>LEAD CASE |
| EMG TECHNOLOGY, LLC, <br><br>            Plaintiff, <br><br>v. <br><br>SAFELITE GROUP, INC. <br><br>            Defendant. | Case No. 6:14-cv-491-MHS <br><br>Consolidated Case |
| EMG TECHNOLOGY, LLC, <br><br>            Plaintiff, <br><br>v. <br><br>PUBLIX SUPER MARKETS, INC., <br><br>            Defendant. | Case No. 6:14-cv-644-MHS <br><br>Consolidated Case |
| EMG TECHNOLOGY, LLC, <br><br>            Plaintiff, <br><br>v. <br><br>RITE AID CORPORATION, <br><br>            Defendant. | Case No. 6:14-cv-646-MHS <br><br>Consolidated Case |

| | |
|---|---|
| EMG TECHNOLOGY, LLC, | Case No. 6:14-cv-647-MHS |
| Plaintiff, | Consolidated Case |
| v. | |
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION – COLLEGE RETIREMENT EQUITIES FUND, | |
| Defendant. | |
| EMG TECHNOLOGY, LLC, | Case No. 6:14-cv-648-MHS |
| Plaintiff, | Consolidated Case |
| v. | |
| TOYS "R" US-DELAWARE, INC., | |
| Defendant. | |
| EMG TECHNOLOGY, LLC, | Case No. 6:14-cv-720-MHS |
| Plaintiff, | Consolidated Case |
| v. | |
| GILT GROUPE HOLDINGS, INC., | |
| Defendant. | |
| EMG TECHNOLOGY, LLC, | Case No. 6:14-cv-721-MHS |
| Plaintiff, | Consolidated Case |
| v. | |
| SALLY BEAUTY SUPPLY LLC, | |
| Defendant. | |

**REPLY OF DEFENDANTS AMICA MUTUAL INSURANCE COMPANY, SAFELITE GROUP, INC. AND TEACHERS INSURANCE AND ANNUITY ASSOCIATION – COLLEGE RETIREMENT EQUITIES FUND IN SUPPORT OF <u>THEIR MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

**INTRODUCTION**

The First Amended Complaint ("FAC") asserts infringement of three patents: United States Patent Nos. 6,600,497 (the "'497 Patent"); 7,194,698 (the "'698 Patent"); and 7,441,196 (the "'196 Patent"). EMG's Opposition focuses on the '196 Patent. When it addresses the other two, EMG combines the claims of the three asserted patents to suggest that terms appearing in one appear in the others when they do not. Other times, EMG ignores the claims entirely, referring only to the specifications. EMG also attempts to expand its causes of actions by adding allegations not pled in the FAC and misstates the standard to apply to Defendants' Motions to Dismiss. After EMG's machinations are unwound, it becomes clear that EMG offers no substantive opposition. This Court should dismiss the FAC.

**A.**     **EMG Fails to Address Each Challenged Claim of Each Patent**

    **1.**     **EMG Improperly Commingles the Claims of the Asserted Patents**

EMG asserts three distinct patents, none of which claims any technological improvement or inventive steps sufficient to cross the threshold of patentability. The '497 Patent recites the abstract idea of showing a user a "matrix" (e.g., a keypad); the user pushing a button; the button-push being sent over a network (e.g., the Internet); and returning another matrix with a second set of options. The '698 Patent similarly recites the abstract idea of showing a user certain advertisements; the user selecting one of the advertisements; thereafter showing the user content over the Internet associated with the selected advertisement; and the content being organized into a menu for further user selection. Finally, the '196 Patent recites the abstract idea of converting a desktop website into a "sister site" with a simplified display (i.e., a mobile website) for viewing on-line content and advertisements on televisions, Internet appliances and other wireless devices.

The '497 Patent and '698 Patent share a Specification, but the '196 Specification is different. While there are overlapping claim terms, each patent recites its own unique claims.

EMG blends the three asserted patents. In its Facts (at pp. 2-8), EMG alternates among them as though part of one single invention. This is best illustrated by the following passage:

> all three patents-in-suit disclose concrete and specific ways to navigate web pages on the Internet by breaking them down into *simplified navigation interface* (as construed by the Court) on a *sister site* ('196 patent) for display using a *custom browser*, using a simplified navigation interface having a *navigation matrix in the form of a two dimensional layer of cells*, whereby the cells have navigation options that are activated by unique input (also construed by the Court to require a one to one correspondence between the inputs and navigation options).

(Opp. at 6-7) (emphasis added.) EMG implies that all three asserted patents contain the claim elements discussed, but they do not. "Simplified navigation interface" is recited in the '698 and '196 Patents but not the '497 Patent. "Sister site" is recited in the '196 Patent but not the '497 or '698 Patents. "Two dimensional layer of a navigation matrix" is found in the '497 and '698 Patents but not the '196 Patent. Additionally, "custom browser" is not an element of any claim. If this is an oblique reference to the clearly generic "client node," that is an element only of certain claims in the '497 patent. By combining various claim elements in an effort to cross the threshold of patent-eligible subject matter, EMG wrongly attempts to elevate each patent into something inventive. Later in its Opposition (at pp. 9-12), EMG provides purported examples of "specific applications of navigating on-line content [that] do not pre-empt the entire field," but again fails to differentiate among the patents. This chart sets forth each term and the patent(s) it appears in:

| Claim Term | '196 Patent | '497 Patent | '698 Patent |
|---|---|---|---|
| "sister site" | X | | |
| "client node" | | X | |
| "two-dimensional layer of a navigation matrix" | | X | X |
| "plurality of cells" | X | X | X |

| | | | |
|---|---|---|---|
| "unique input" | X | X | X |
| "primary navigation options" | X | X | X |
| "simplified navigation interface" | X | | X |

In presenting the claim terms as it has, EMG provides the Court with an inaccurate view of the particular claim elements at issue for each patent. The Court should disregard EMG's "combination" invention and consider each patent separately.

### 2. EMG Relies on the Patent Specification and Not the Claims

Similar to combining the three patents into one and blurring their differences, EMG alternates between the claims and the specifications as though equally relevant to the inquiry. A patent's specification is not the proper focus of an eligibility analysis. *See Clear With Computers, LLC v. Dick's Sporting Goods, Inc.*, 2014 WL 923280, *5 (E.D. Tex. Jan. 21, 2014). As the Supreme Court held in *Alice*, the first step is "whether the *claims* at issue are directed to one of those patent-ineligible concepts." 134 S. Ct. at 2355 (emphasis added). The entire first section of EMG's Statement of Facts (at pp. 2-8) refers to the specifications, until EMG turns to the prosecution history of the '196 Patent, which is equally irrelevant. EMG eventually discusses specific claim terms, but continues to rely on the specifications, even for terms already construed by this Court. The Court should not give weight to the specifications over the claims.

### B. EMG Misconstrues the Standard for Dismissal

EMG relies on the 2013 Federal Circuit *Ultramercial* decision to argue that Defendants must establish dismissal by clear and convincing evidence. (Opp. at 14.) EMG ignores that the court's decision was vacated for reconsideration in light of *Alice*.[1] *See WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). On reconsideration, the Federal Circuit did not address the presumption of validity or suggest that invalidity must be proved by clear and

---
[1] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

convincing evidence at the Rule 12(b)(6) stage. Judge Mayer noted in concurrence that "[a]lthough the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility." *Ultramercial, Inc. v. Hulu, LLC*, 2014 U.S. App. LEXIS 21633, *25 (Fed. Cir. Nov. 14, 2014) (Mayer, J. concurring).[2]

### C. EMG's Non-Method Claims Do Not Change This Court's Analysis

#### 1. EMG Failed to Allege a System, Apparatus or Machine Readable Medium

EMG is wrong that the FAC alleges system, apparatus or machine readable medium claims. EMG describes Amica's alleged infringement as follows:

> Amica is in the business of providing insurance products and services including automobile, homeowners, marine and personal umbrella liability insurance, and that a significant portion of its revenue derives from the promotion and/or sale of its products and services through its Internet web sites, including at least the following web sites reformatted for use on portable devices and cellular phones capable of browsing the Internet using a small screen, located at http://www.amica.com/ and https://m.amica.com/index.html ("Accused Instrumentalities").

(FAC ¶ 6.)[3] Nowhere in the FAC does EMG mention any apparatus or machine readable medium such as a server or other hardware. EMG refers to non-method claims it purports to have asserted in another case (Opp. at p. 1, n. 2), but that does not inform the allegations of the FAC.

Moreover, EMG contends that Defendants' "*mobile web servers*" are "apparatus having a machine readable media implicating EMG's non-method claims" and that Defendants "ignore that

---

[2] Judge Mayer further explained, "The rationale for the presumption of validity is that the…PTO…'in its expertise, has approved the claim.' That rationale, however, is 'much diminished' in situations in which the PTO has not properly considered an issue. Because the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101." *Ultramercial*, 2014 U.S. App. LEXIS 21633, at *24 (citation omitted). Judge Mayer also noted, "whether claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation." *Id*.

[3] The allegations against Safelite and TIAA-CREF are substantively identical. (FAC, ¶¶ 7,10.)

they make and use the accused mobile website *as well as the related software, which is stored on a machine readable medium…*" (Opp. at 1) (emphasis added.) None of these arguments to avoid dismissal are allegations in the FAC. Additionally, even if the Court accepts EMG's arguments not found in the FAC, at most, the servers only implicate the machine readable medium claims of the '196 Patent and '698 Patent. The '497 Patent recites apparatus claims (9-20), but EMG does not identify any apparatus in the FAC or its Opposition. The '698 Patent recites a system claim (45), but EMG likewise does not identify a system. Given the claim elements, the mobile web servers cannot be apparatuses or systems. Since only Defendants' websites are identified as the Accused Instrumentalities, EMG does not assert non-method claims.[4]

## 2. EMG's Machine Readable Medium Claims are Also Invalid

Even if EMG were permitted to amend again its FAC with new allegations set forth in its Opposition, it does not alter the Court's two-part *Alice* analysis. The machine readable medium claims in the asserted patents merely recite the implementation of its method claims on generic equipment.[5] The Supreme Court squarely addressed this issue in *Alice*. After finding the method claims invalid, the Court held, "Petitioner's claims to a computer system and a computer-readable medium fail for substantially the same reasons [as the method claims]." *Alice Corp.*, 134 S. Ct. at 2360. The Court rejected the patent holder's argument that the claims recite specific hardware, finding that "none of the hardware recited by the system claims offers a

---

[4] EMG's contention that it has complied with "liberal pleading standards" misses the point. EMG claims that it is not required to identify in its complaint what patent claims are alleged to be infringed. (Opp. at 16, n. 24.) This is immaterial because the deficiency in EMG's pleading is not that EMG failed to identify the claims at issue. Rather, EMG failed to identify any apparatus or machine readable medium that plausibly can infringe any non-method claim. While the Federal Rules of Civil Procedure only require a plaintiff to identify its patent generally, "fair notice" requires that the allegedly infringing products be pled specifically. *See Fifth Mkt., Inc. v. CME Group, Inc.*, 2009 U.S. Dist. LEXIS 108776, at *3 (D. Del. May 14, 2009).

[5] *I.e.*, Claim 9 (method) of the '196 Patent corresponds precisely to Claim 25 (machine readable medium), as do the dependent claims to each. Likewise, Claims 1 (method), 58 (machine readable medium) and their respective dependent claims match. As for the '698 Patent, Claims 1 (method), 23 (machine readable medium) and their dependent claims are the same.

meaningful limitation beyond generally linking the use of the [method] to a particular technological environment, that is, implementation via computers." *Id*. (Internal quotations omitted.) "Put another way, the system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." *Id*. Here, EMG's method and machine readable medium claims are the same except for the addition of generic computer equipment and, thus, invalid just like the method claims.

### D. EMG's Abstractness Analysis is Materially Flawed

#### 1. EMG Conflates the Requirements of Section 101 with Section 102

EMG repeatedly contends that its patents are not directed to abstract ideas—and therefore satisfy the first step of the *Alice* analysis—because certain elements of the patents are "novel and inventive." (*See, e.g.*, Opp. at 17, 20, 21, 22.) But the Federal Circuit expressly rejected this Section 102-type analysis: "[w]e do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete." *Ultramercial*, 2014 U.S. App. LEXIS at *11-12. Ultramercial had argued that its patent was valid because it was directed to a "specific method of advertising and content distribution that was previously unknown and never employed on the Internet before." *Ultramercial*, 2014 U.S. App. LEXIS 21633 at *8. EMG similarly argues that its asserted patents claim "specific ways of navigating the internet," and such "specific" features were distinguishable over the prior art. (Opp. at 1-2, 7-8.) Even if true (which it is not), such novelty is immaterial to the question of whether EMG's patents cover abstract ideas. Since EMG does not otherwise argue that its inventions are not abstract, it appears to have conceded the point.

## 2. EMG Ignores the Limitations of the Claims at Issue

The first step of the *Alice* test is "whether the *claims* at issue are directed to one of those patent-ineligible concepts." 134 S. Ct. at 2355 (emphasis added). EMG never characterizes its claims as a whole but, rather, parses out particular claim elements to argue they are not abstract ideas. For example, EMG contends that "sister site" is not captured in Defendants' description of the invention of the '196 Patent as the abstract idea of "reorganizing content or advertisements into simple-to-use menus that have multiple levels." (Opp. at 17-18.) EMG cites the Court's construction of "sister site" as "a site that provides for navigation of a related website using a simplified navigation interface" to argue that Defendants' characterization ignores the creation of a separate, related website. (Opp. at 18.) This is far too narrow a view on abstraction. Of course, a patent never *literally* recites the abstract idea.[6] Rather, the question is whether each claim sets forth an "ordered combination of steps [that] recites an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 2014 U.S. App. LEXIS at *10.

Here, in the case of the "sister site" limitation, which appears only in the '196 Patent, Claim 1 recites an abstraction without any concrete or tangible form and is exemplary of the flaw in EMG's argument. Claim 1 requires that the "sister site" has a simplified user interface for navigation on a television, cell phone, or other device; the interface is in the form of a "matrix" or "layer" of "cells"; the content (and/or advertisements) is displayed in the cells. This describes a simplified menu created from a hard-to-navigate content. Further limitations of Claim 1 specify navigation between menu options to arrive at the content. The fact that the described simplified menu exists as a "sister site" coded in XML and created from a related website by reformatting HTML content does not change the fact that the claim limitations, read together,

---

[6] Instead, patentees use the "draftsman's art" to try to elevate abstract subject matter. *See Alice*, 134 S. Ct. at 2360.

recite the abstract idea of reorganizing content into an easier-to-use menu. EMG does not claim to have invented XML, HTML or a "sister site." Nor does EMG claim how "reformatting" is done,[7] or any other technical limitation. EMG merely applies to the Internet (and ubiquitous existing website formats) the concept of reorganizing content into a simplified menu, a practice deemed insufficient to confer eligibility. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014).

Other claim elements that EMG contends "demonstrate that the claims are specific applications of navigating on-line content" (Opp. at 9) similarly fail to discuss those elements in the context of the claims of each patent. For example, "two-dimensional layer of a navigation matrix" appears in several claims in both the '497 and '698 Patents, including Claim 1 of the '497 Patent. Claim 1 recites the method of providing a user with a set of choices; the user selecting one option; that option being sent over the Internet; and another set of options or final set of content is displayed. Read together, the claim limitations set forth an abstract idea, which EMG fails to address, instead focusing on individual elements. The fact that Claim 1 requires that the set of choices be organized into at least a two-by-two grid (the definition of "two-dimensional layer of a navigation matrix") does not make the idea any more concrete. The remaining "features" EMG describes (at pp. 9-12) likewise do not alter the abstractness analysis.

E.     **The Asserted Patents Do Not Claim Any Inventive Concept**

Under the second step of the *Alice* test, to be patent-eligible, "[a] claim that recites an abstract idea must include additional features to ensure that the [claim] is more than a drafting

---

[7] EMG's conclusory claim that it describes how content is reformatted from a technical prospective because it specifies converting from HTML to XML (Opp. at 19) misses the mark. HTML and XML are merely programming languages and XML is the standard for mobile websites. Accordingly, converting from HTML to XML, on its own, fails to describe how it is done and does not create a meaningful limitation, especially considering how expansively EMG construes XML (*i.e.*, to include at least XHTML and HTML5).

8

effort designed to monopolize the [abstract idea]." *Ultramercial*, 2014 U.S. App. LEXIS at *12 (quotations omitted). Those "additional features" must be more than "well-understood, routine, conventional activity." *Id*. As discussed above, EMG confuses the two steps of the *Alice* test, arguing that the asserted patents are not abstract because certain claim terms are "novel and inventive." Inventiveness may be material, however, to this step of the analysis, but EMG fails to articulate any inventive features. Again, EMG blends the patents, contending all three asserted patents are patent-eligible because three claim terms ("sister site," "unique inputs" and "simplified navigation interface") are inventive.[8]

### 1. The '196 Patent

EMG contends that the use of a "sister site" recited in the '196 Patent is not conventional or routine. (Opp. at 28.) In support, EMG claims that the examiner determined that "sister sites" was not disclosed in the prior art navigation interfaces when he allowed the claims. (*Id*.) But in fact the examiner determined that every single element of the application that matured into the '196 Patent lacked novelty, including "sister sites" and "unique inputs." (June 28, 2011 Not. of Intent to Issue Reex. Cert., Reex. Con. No. 95/001,286, at 4). The '196 Patent was allowed solely because the patentee added the "hyperlinking" element that EMG does not even argue in its Opposition is novel and inventive.

As with "sister site," nothing about "unique inputs" and "simplified navigation interface" are novel and inventive. To the contrary, these are quintessential apply-the-idea-to-the-Internet claims. One-to-one correspondence between an input and content is a familiar concept in various fields—*e.g.*, gaming, telephony. As claimed, "unique inputs" preempts all modes of

---

[8] EMG claims that Defendants failed to address "other novel and inventive elements." But EMG does not say how they are inventive. Rather, it lumps the "141 claims of the patents-in-suit" together and lists certain "unconventional and non-standard features" without articulating a basis for its conclusory statement. That list includes certain claim terms that EMG defined earlier in its Opposition but did not address inventiveness there either (*see infra*. at 2-3).

making a unique menu selection on a mobile website, including touchscreen. The fact that "unique inputs" does not preempt the use of a mouse as an input device (Opp. at 9) does not diminish this preemptive effect because no one uses a mouse to access content on a mobile device. Likewise, "simplified navigation interface" merely describes a grid at least two-by-two with menu options with unique inputs. Nothing about such a common interface transforms the abstract menu (or decision tree/phone tree) concept into patent-eligible subject matter.[9]

### 2. The '698 Patent

The only "novel and inventive" claim elements that EMG asserts from the '698 Patent are "unique inputs" and "simplified navigation interface." (Opp. at 20-21.) As discussed above, neither element transforms the abstract concept in patent-eligible subject matter.

### 3. The '497 Patent

EMG only asserts "unique inputs" as "novel and inventive" from the '497 Patent. This has also been addressed above.

In short, the asserted patents are directed to abstract unpatentable subject matter. EMG provides no basis for this Court to find any "inventive concept" to transform those abstract ideas into eligible inventions.

## CONCLUSION

For at least the foregoing reasons and the reasons set forth in Defendants' motions, this Court should grant Defendants' motions and dismiss EMG's First Amended Complaint.

---

[9] EMG attacks Defendants' characterization of its inventions as a phone tree or simple decision tree on the basis that Defendants failed to demonstrate that such applications are not patentable. (Opp. at 7, n. 9.) In support, EMG refers to an IBM patent concerning a phone tree. But the comparison is inapt for several reasons. Among other things, IBM's patent, unlike EMG's patents, do not claim the phone tree itself, which is prior art. IBM merely invented a visual representation method. Not to mention, by their very nature, no two patents are the same. EMG's suggestion that its patent should survive because IBM's exists lacks any legal or logical basis.

Dated: December 5, 2014         Respectfully submitted,

                                         By: */s/ Byron L. McMasters*
Allen F. Gardner (State Bar No. 24043679)
allengardner@potterminton.com
**POTTER MINTON**
110 N. College, Suite 500
Tyler, Texas 75702
(903) 597 8311/(903) 593 0846 (Facsimile)

Craig M. Scott (Admitted *Pro Hac Vice*)
cscott@hinckleyallen.com
Byron L. McMasters (Admitted *Pro Hac Vice*)
bmcmasters@hinckleyallen.com
**HINCKLEY, ALLEN & SNYDER LLP**
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000/ (401) 277-9600– Fax

**COUNSEL FOR AMICA MUTUAL INSURANCE COMPANY**

By: */s/ Neil J. McNabnay*
Neil J. McNabnay (Texas Bar No. 24002583)
njm@fr.com
Thomas M. Melsheimer (Texas Bar No. 13922550)
txm@fr.com
Chad B. Walker (Texas Bar No. 24056484)
cbwalker@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**COUNSEL FOR SAFELITE GROUP, INC. AND TEACHERS INSURANCE AND ANNUITY ASSOCIATION – COLLEGE RETIREMENT EQUITIES FUND**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on December 5, 2014 via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by First Class U.S. mail on this same date.

                */s/ Byron L. McMasters*